Next in Case 21-846, Cruz v. Arizona. Mr. Katyal. Thank you, Mr. Chief Justice, and may it please the Court. In 2005, John Cruz was sentenced to death. The judge instructed jurors that without a death sentence, Cruz would face quote, life imprisonment with a possibility of parole. The judge did so despite this Court's decision 11 years earlier in Simmons. Cruz's jury labored under a seriously wrong idea. Indeed, the jury forum in the very next day said, quote, we wanted a reason to be lenient, and many of us would have rather voted for life, but we were not given an option to vote for life in prison without the possibility of parole. Cruz wasn't the only one. Twelve separate times, twelve separate times, the Arizona Supreme Court wrote decisions refusing to apply Simmons. In 2016, this Court summarily reversed all this in Lynch, fundamentally changing capital trials in Arizona. Cruz then used Lynch to seek post-conviction relief under Arizona Rule 32.1G, yet the Arizona Supreme Court refused, saying Lynch didn't change the law, it just changed the application of the law. That interpretation of Rule 32 is not an adequate and independent state ground for three separate reasons. First, to be adequate, an interpretation must be firmly established and regularly followed. This hair-splitting distinction between changes in the law and applications of the law is entirely novel, entirely handcrafted. The state doesn't even defend it. Second, the decision below discriminates against federal rights. It places defendants like Cruz in a catch-22 to prevail under federal law. They have to argue that Lynch applied a settled rule, but that very argument dooms their claims under state law. It also discriminates against decisions of this Court by giving them narrower effect. And finally, the decision below is not independent. It's interwoven with federal questions. The Arizona Supreme Court's analysis of Rule 32 turned on its reading of this Court's precedents. Simmons was the law of the land in 49 states, all except Arizona. Arizona is an extreme place. Out of their 49 states, not a single one is supporting them. If I could start with the first point about novelty. Let's just talk about what we're considering. I understand Simmons and Lynch, but I understand the Arizona Supreme Court to be saying it does not, under our rules, there's nothing more here. They simply interpreted their Rule 32. How do we get from that interpretation of their rule to a federal issue? Each of these three arguments, Justice Thomas, are things this Court has used before to get to the federal issue. So first, with respect to novelty, if a state enacts a procedural rule that is only about state law, but it is a barrier to federal claims or is novel in some way, this Court, time and again, starting with Justice Holmes in 1904, going to this Court's much more recent decisions, have said that it's got to be firmly established and regularly followed. And that's so for two reasons. One is, if it's a novel rule, it might be discriminating against federal rights, and that's a tell. The other is that you have to provide fair warning to the defendant, and the case law talks about both. And in this case, it's on novelty. So that's the first point. The second is, the other way, the second way you get to a federal issue is that this Court polices, indeed, the Court in Walker said it's regularly said that if an interpretation discriminates against a federal right, even if it's purely a matter of state law, take for example this Court's decision just last year in Espinoza versus Montana, that was purely interpreting a state constitutional provision, but there was a federal question lurking under that. And that is true here as well because of the discrimination. And then the third is that it's interwoven with federal law. It's not actually purely, and I would fight the premise of your question, a state interpretation. It's not just a state interpretation. And these are three separate arguments. You can disagree with me on any one, but they have to run the table and win all three of them. Counsel, you phrase this and present it for understandable reasons as hostility to a particular federal rule, but you can also look at it as a neutral rule, a procedural rule. I mean, the state doesn't have to provide collateral review of this particular claim, and they've decided they're not going to. And that doesn't exhibit hostility. It's just shaping the availability of collateral review, just as AEDPA does in the federal system. Absolutely, Your Honor. It could be seen that way. But here, of course, this is a novel interpretation, and that alone, even apart from whether it discriminates or is neutral, that's enough to reject it under this Court's precedence. And then, with respect to whether or not this is evenhanded, we obviously don't think it is, for the reasons our brief says. We agree with you, Mr. Chief Justice, that if it were truly a neutral rule that withdrew from the field, for example, all post-conviction review, that would be one thing. But here, Arizona holds out Rule 31.2 and says to defendants like Cruz, if there's a post-conviction proceeding. Cruz did exactly that, and now it becomes a shell game, because then they say, oh, that rule was so clearly established that it's not actually a significant change in the law. That's, of course, the opposite of what the Arizona Supreme Court did in Cruz's very case back in 2008. In 2008, when Cruz brought this, they said the reverse. And so, you know, the Arizona Supreme Court has been essentially talking out of both sides of its mouth. You said in Simmons, this is the rule of the land. Cruz was convicted after Simmons. You said it again in Lynch, after the Arizona Supreme Court, in 12 published opinions, refused to apply Simmons. And now the Arizona Supreme Court turns around and says, oh, because it's so clearly established, now you can't have a 31.2 petition. And that's pulling the chair out from under them. I'm sorry. You began with three points. And if I remember correctly, the first two require us to analyze the opinions of the Arizona Supreme Court as to whether it's novel. But assume that it was always the rule in Arizona that a significant change in the law, whether federal or state, would be covered, and that a significant change in the law is different from a significantly new application of the law. Okay? Suppose that was always the rule. Then what would be ‑‑ what is left of your argument? Well, Your Honor, it would be hard for me to understand exactly what they had said before. I can tell you what the Arizona Supreme Court actually has said before, if you look at a case like Rendon. Because in Rendon, what the Arizona Supreme Court said, and this is true in many different cases, they say the archetype of a significant change in the law is overturning of precedent. And in Rendon, that's what happened. They overturned an intermediate Arizona Supreme Court precedent. This was just on one thing, the definition of burglary. And what that court said, the Arizona Supreme Court said is, ha, that is something that allows a 31.2G petition. And they said this even though, quote, it is not a new rule, but rather a corrected definition of the crime. Well, as I said, you have arguments that require us to analyze what they've done. And I've looked at that. We will look at it again. But assuming for the sake of argument, this is a hypothetical, that the rule has always been what the Arizona Supreme Court now says the rule is, what is your remaining argument? So that would make it ‑‑ take away the novelty because that would be firmly established, regularly followed, assuming that that's part of built into your hypothetical. It wasn't, but we can assume that. It would still discriminate, I think, in practice and operation against federal rights. And what this court said in Walker is that's the test, not whether it's neutrally written. Well, I meant to make that part of my hypothetical, too. So they say that there's no discrimination. We treat changes in federal law the same way we treat changes in state law. It's almost impossible, Your Honor, to imagine that hypothetical because, you know, like would a decision be dictated by Arizona Supreme Court precedent if a decision is overruling Arizona Supreme Court precedent? I mean, the way in which the court below got to what it did is it said at petition appendix page 7A that when we overturn precedent, that's generally the archetype of a significant change in law. And then they said, well, it's not a significant change in law because Lynch was always the law of the land. It didn't change anything. Simmons was always the law of the land. That I think that rationale could only apply to decisions of this court. I think it's a decision handmade, you know, jerry-rigged, to use Justice Kagan's word from the last argument, only for really a circumstance like this in which the U.S. Supreme Court is overturning something. So I just don't think it could be written neutrally. Mr. Kuchner, I thought I had understood you to respond to the Chief Justice before your colloquy with Justice Alito that if there were an independent and adequate state ground, if they had such a rule, then it would be barred. Is that right? If there were – what's the – If the state of Arizona had an independent and adequate rule that it consistently followed, then your claim would be barred. If there truly was one. These were three reasons why – No, I understand. But you can see that there's a world in which Arizona wouldn't have to supply this. Correct. Yes. And in fact, the federal district court found this argument procedurally barred under 2244, right? Oh, Mr. Justice Gorsuch, I don't think that has anything to do with it. There they found that there was – But it's plausible that it could be procedurally barred. In federal habeas court, maybe there's a federal habeas barrier. We don't think that there is for reasons our brief explains. Well, but 2244 speaks of requiring a decision of this court to be declared retroactive by this court. Well, we're – And the district court found that there was no such decision in this case. Justice Gorsuch, the district court is a totally separate proceeding. I understand that. I guess I'm just wondering how we can fault Arizona for having a rule, if it were consistently followed, that would effectively parallel the federal rule. Well, Justice Gorsuch, I don't think that whatever is going on in the federal habeas bears on the jurisdiction of this court under 1257. They're two separate proceedings. And to answer the question presented, which is simply whether or not there is an adequate and independent state ground from the petition from the Arizona Supreme Court, I don't think matters to federal habeas. With respect to that, look, we don't doubt that there could be waiver arguments that are available even from a review of a state's post-collateral review proceeding. We're not questioning any of that. What we're saying here is that Cruz did everything right. He preserved his argument at every turn, starting from trial and when he was convicted, and then – Well, what do we do about that, actually? That raises another point in my mind, which is the trial court, admittedly not the Arizona Supreme Court, but the trial court here did find that your client failed to present a jury instruction along these lines to preserve this argument. And so even if we were to find for you and say there was no independent and adequate state bar, all we'd be doing is sending it back to the Arizona Supreme Court to find that he waived the argument in the first place, and we've accomplished very little. Well, that was just wrong under this court's decisions in Simmons and in Lynch. So in Simmons – But we wouldn't be able to review that. That would just be a waiver under state law, and if the Arizona Supreme Court were to affirm it, you'd think it's wrong and you could appeal, I understand, but that would be all state law, right? No, Justice Gorsuch, that's exactly a federal question. This court in Simmons and in Lynch said – Waiver's a federal question? Well, the reason that they're claiming waiver, which is you didn't seek a jury instruction, here Cruz sought to present evidence about his parole and eligibility, and at pages 163 to 167 of the plurality in Simmons, and at 175 to 179 of Justice O'Connor's concurrence, it says either suffices, seeking evidence of parole and eligibility or a jury instruction, and definitely can't be the case that you couldn't or a federal court couldn't review that. That is a purely federal matter. Last question, I hope. In Beard, Justice Kennedy said that when we – when we approach the question of the consistency of state courts' decision-making in this area, adequate – interpreting their own laws, their own procedural rules, 32.1, whatever it is, we have to give those state Supreme Courts some leeway to develop their own jurisprudence that we would expect to allow ourselves and other federal courts. What's your response to that? We absolutely agree with all of that, Justice Gorsuch. The test has always been – So we should take that as a given. Firmly established, regularly followed. That's what Justice Kennedy says in that case. That's what their own brief in opposition admits at page 11 is the standard. There is no way you can get to regularly followed and firmly established. This application of the law concept, that's entirely hair-splitting. And if you want to know just how hair-splitting it is, because you mentioned the trial court proceedings, look at what these prosecutors said to the trial court. I just – on my question, I just – you agree with Justice Kennedy in Beard? Yes. I mean, so you could go – you know, so as long as it's predictable, provides fair warning, and firmly established, absolutely. This is the opposite. This is what the prosecutor said at Joint Appendix, page 307. Quote, Lynch overruled a well-established line of Arizona Supreme Court opinions holding that Simmons did not apply in Arizona. It was an unambiguous rule that the defendants were not entitled to Simmons' instructions. That's what they said then. Take a look at now what they're saying at Red Brief, page 1. They say the exact opposite. They say Simmons was well-established. Can I ask you how much of your – the firmly established and regularly followed principle relies on bad faith by Arizona? Does it – does it matter – you know, you say novelty is one thing, and you define it in this way. And then discrimination, the result is unfair. Does any of that turn on Arizona doing this on purpose? No. No, not at all. So it's purely about whether it's regularly established and firmly – firmly established and regularly followed. And the reason for that is it's kind of almost like, you know, other doctrines in law in which you're using it as a tell. You can't actually figure out motivations. You're not worried about that. You just simply ask, is there fair warning for the defendant? Is this a predictable rule? This is the very opposite of a predictable rule. And indeed, it's so unpredictable that after the prosecutor said this in the trial court, the trial court, on post-conviction review, said, quote – and this is a petition in Plaintiff's 15A – the rule announced in Simmons and Lynch is not a well-established constitutional principle. The Arizona Supreme Court's consistently held otherwise in at least nine separate opinions. So this is essentially – Well, I thought – I thought – I'm sorry to interrupt, but I thought that why they were doing this was important, whether we're looking for hostility or just finality is kind of the question. And Justice Kennedy in Beard said that what we should be looking for is a showing of a purpose or pattern to evade constitutional guarantees. I thought you agreed with that. Oh, he certainly does. So that's essentially a gravy, Justice Gorsuch. So we don't need to show hostility. That's what he's saying is one way in which you can show that the novelty doctrine has been met. But it is certainly not the only means. And I think going all the way back to Justice Holmes' opinion in Rogers in 1904, all the way through all of the different cases, sure, some of them, like the NAACP cases, do talk about hostility, but it has never been a requirement. And for one very simple reason, half of the novelty to federal rights. Could you show hostility in this case? Oh, absolutely. This is, I think, the quintessential example, Justice Kagan. Again, doesn't turn on it. It's sufficient, but not necessary. And so if you think about just what the Arizona Supreme Court did here, and, you know, Cruz brings his direct review petition. They say Simmons doesn't apply in 2008. Twelve separate defendants bring their cases. All of them, they say Simmons doesn't apply. This court then summarily reverses that in Lynch in 2016. So now they've said twice, hey, Simmons does apply, this rule does apply. And then the Arizona Supreme Court turns on a dime and says, oh, actually, Simmons has been the law all along. The exact opposite of what they've been saying, the exact opposite of what even the trial court on post-conviction review in this case said. This is a very unusual case, which is why I suspect Arizona stands alone in this court. And to be sure, there are broader arguments we're making about discrimination in federal law and so on. We don't think you have to reach any of that. We think you can just simply say, this is a jury-rigged interpretation for this case only. There's not, the opposite of regularly followed and firmly established, and leave it at that. Mr. Katyal, whether Arizona stands alone or not doesn't have much to do with the question that we have to decide. But why would we expect other states to file in a case that involves the kind of stuff that you've been talking about, the interpretation of a one particular state procedural rule? Well, because my friend on the other side says if you do this, it's going to open federal court review to other states and things like that. And our only point here is to just simply say, you know, no other states worried about it, because I think this is a really unique fact pattern. There are 27 states that have the death penalty, nothing about that. Sixteen states have parole eligibility. Okay. Well, I don't, if it's a really unique fact pattern, then I don't know what, whether it, why it matters whether other states are here or not. To get back to the question I was trying to address in my prior question, suppose Arizona says or any state says that we will limit this form of collateral review to situations in which we, in our judgment, believe that there has been a significant change in the law, including federal law. So it's solely their judgment as to whether there's been a significant change or not. Is there anything wrong with that? I think there could be under this Court's precedence in Danforth and Yates. We don't think you have to get there, but I think those cases do set forth a minimum amount, a minimum floor of retroactivity. And if the state post-conviction review proceeding isn't open to them, to certain federal claims, then I think it could present a problem under this Court's decisions. So this is your argument about independence? It's an argument, I think it would probably be more about adequacy, Justice Alito, that basically the state is not offering an adequate ground because that forum is only open to certain claims. Now, again, our point is you don't need to have post-conviction review, but if you do so, it's got to be even-handed, it's got to be done in advance with notice for a defendant. Someone like Cruz did everything right, making his objection at the trial, making it at sentencing, making it after sentencing on direct review, filing his post-conviction review proceeding soon after this Court's decision in Lynch, and yet they turn on a dime and say, oh, no, now there's a new interpretation of 32.1. And I think you should, if you might, ask my friend on the other side, name one precedent ever when the Arizona Supreme Court, indeed any court in Arizona, said 31.2G is not met when precedent has been overturned. They can't point to a single example. We point to many the other way, including most predominantly the Rendon decision. And so... Mr. Cahill, before your time, your regular time, is up, why isn't the situation that I posited the same as the situation in Stewart v. Smith? I'm so sorry, Justice Alito, I'm not familiar with Stewart v. Smith. I don't think that was briefed in this case. Thank you, counsel. Justice Thomas, anything further? Justice Alito? Just one question, Mr. Cahill. I think underlying some of Justice Alito's questions and Justice Gorsuch's questions was a view, not a belief, that the Arizona Supreme Court interpretation of Rule 32.1G isn't completely novel interpretation, but only a reasonable extension of that court's Rule 32.1G jurisprudence to a new context. Why do you think that's wrong? Because it's literally the opposite of the rule that's been applied in cases like Rendon, in which they say overturning precedent is the archetypal example of a significant change in law. This idea that application of the law is somehow the distinction, whatever that is, it's not regularly followed, it's certainly not firmly established. This Rule 31.2G has been around for decades. Not a single court has ever interpreted it this way, and it has been the time-honored role, Justice Sotomayor, of this court, starting with Justice Holmes in 1904, but going to Ward v. Board, going to Patterson, going to Flowers, going to Bowie, going to Ford v. Georgia, in which Justice Thomas was on that unanimous decision. All of these cases are ones in which this Court says, that's a novel interpretation, you can't do it. Maybe going forward you can, but certainly not to people like Cruz, and we know it made a difference in this case. Now, Ford v. Smith was mentioned in the red brief on page 16. Do you want to take a look at it? I'll have a rebuttal if I could. Oh, you will. Okay. Justice Kagan? Thank you, Counsel. Mr. Kainfield? Mr. Chief Justice, and may it please the Court, on May 26, 2003, the Petitioner murdered Tucson police officer Patrick Hardesty in the line of duty by shooting him five times at point-blank range. He comes here today on appeal of a successive State post-conviction judgment to obtain a new penalty phase so that he can request a parole and eligibility instructions under Simmons v. South Carolina, a case which predated his trial by over a decade. The Arizona Supreme Court's holding that Rule 32.1G precludes Petitioner's request for successive post-conviction relief is grounded in the core principle of finality and is adequate and independent State ground for its judgment. The holding is adequate because Rule 32.1G has been firmly established and regularly followed. Under the rule, Arizona's indisputable interest in finality of criminal convictions can only yield to a claim based on those rare decisions announcing a new rule of law or a significant statutory or constitutional amendment. Here, Petitioner did not make that application of the Simmons rule in the unique context of Arizona's sentencing and parole statutes. Thus, the Arizona Supreme Court held that Lynch was not a significant change in the law under the rule, which is a State law holding. The Arizona Supreme Court's holding is also independent because its significant change analysis under the first prong of Rule 32.1G does not require any determination on the merits of Petitioner's Federal law claim. This Court looked only to whether Lynch significantly changed existing law, which is a State procedural question. For these reasons, this Court should find that the Arizona Supreme Court's ruling was adequate and independent. I welcome the Court's questions. If the Arizona Supreme Court had decided Lynch, would it have been a significant rule? No, Your Honor. Significant change? It would have been the same as this Court. Have there been examples where the Arizona Supreme Court changed one of its precedents or overruled one of its precedents and then said it wasn't a significant change? We haven't found any specific example of where that's occurred, Your Honor. But that doesn't say — How can you be so confident that if they had decided Lynch, that wouldn't be a significant change? I mean, if that's not the way the rule has been applied in other situations, then why was the answer to Justice Thomas' first question, I know for sure that if Arizona had decided Lynch, that would not count? Well, I guess we don't know for sure, but we can only speculate, Your Honor. Okay. But I — this just doesn't come up that often, so I want to make sure I'm understanding the Court's question. There are situations where the Arizona Supreme Court has applied the rule where a case has interpreted a statute for the first time, like the Shrum case, and said that that was not a significant change. But what about the — so what about the application of 32.G? In situations in which Arizona announces a new legal rule substantively, are those situations in which 32.G has ordinarily been applied because there was a significant — there was a change in the law? Yes, Your Honor. I guess the case that comes to mind is the Slemmer case cited where it wasn't a court decision. It was — well, let me make sure I'm getting this right. The Arizona Supreme Court — there was a subsequent decision involving the burden-shifting self-defense instruction where the court — an Arizona appellate court determined that it had been getting it wrong, and the court did hold that that was a significant change because the rule changed before. But that — why isn't that this very situation if you take Justice Thomas' hypothetical? I understood him to say Arizona had been applying — had been rejecting the Simmons principle so that the law in Arizona was that you don't get this jury instruction. And then, hypothetically, if the Arizona court decided Lynch, suddenly they're saying, okay, now you do get that principle, why isn't that the case in which 32.G would apply? Because, Your Honor, the rule only applies in significant changes, and the Arizona Supreme Court has made that very clear that that requires a clear break from the past, a transformative event. And yes, the archetype is overruling prior precedent, but here the rule was the rule in Simmons. It's never changed. But it wasn't the rule in Simmons in Arizona. I mean, you know, maybe I'm just being simple-minded about this, but at point A, Simmons was not operative in Arizona, and in point B, Simmons was operative in California. Change in the law. Well, not — every precedent is a change to some extent, but the — Well, that's a big change. Yes. I mean, the right is not there to be invoked. Now the right is there to be invoked, and that happened as a result of Lynch. Now, it's true it should have happened earlier, but in Arizona, Simmons could not be invoked. The — you know, the defendant would have been told, too bad. Now the right can be invoked. That's as big a change of law that there is. Your Honor, I just respectfully disagree. That's not the way that the Arizona Supreme Court approaches the interpretation of the significance for purposes of Rule 32.1G. It has to be a change to the underlying rule, not just a change to the application, which Arizona clearly got it wrong. This Court told the Arizona Supreme Court. So I think the other thing I would point out was just — obviously, the rule of Simmons never changed, but the — The rule in Arizona was that Simmons did not apply. Then the rule in Arizona became Simmons did apply. Significant change? Not — Sounds like a significant change. It's not a significant change. It's a — it was a misinterpretation, and maybe it would help to look back at what happened in Simmons, where the South Carolina law clearly said that if you had a prior conviction, you were parole-ineligible. And this Court held in Simmons that the state law has to absolutely prohibit the defendant's release on parole. So that was clear. But in Arizona, it wasn't — it wasn't clear. So you're saying it's a change. It's just not significant. We're focused on the significant. Absolutely, Your Honor. That is what — that's the threshold to coming in to state habeas court in Arizona. So what are your hallmarks for significant? So as we're all agreeing now, there's definitely a shift in Arizona, because now they're recognizing Simmons. But in order to be significant for the purpose of Rule 32.G, what do we have to see? Or what does Arizona say they have to see? So the — it's the Surum case, the 2009 Arizona Supreme Court case, which you cited. That's where the Court set forth what the — how — what the rule is in interpreting that. And that's — there has to be a clear break from the past. There has to be a transformative event. It has to be a rare occurrence where the rules actually change. A clear break from whose perspective? I mean, clearly, it's a clear break from the courts of Arizona's perspective. Do you at least concede that? It's — yes. Okay. And the example that the Court give — is — gave below is the Ring case from this court. Before Ring, jury aggravator — death sentence aggravators could be decided by a judge. After Ring, they had to be decided or determined by a jury. That was a significant change. But, counsel, don't you think this distinction — I mean, as I understand it, it's this application of law versus the underlying law itself that drives your determination that this wasn't a significant change for purposes of 32.1G. It seems kind of artificial. And as I understand it, you know, the novelty of it is — you hadn't had it before. This was an extension of the law, an extension of interpreting 32.1G. It just seems like hair splitting. Well, Your Honor, it's not — we just don't read this Court's interpretation of novelty the same way. This obviously is the first situation that has been presented to the Arizona Supreme Court in this context. I think Justice Gorsuch is pointing out how this Court said in Beard, you've got to give the State some flexibility, especially when it's applying and it's fleshing out its rule for the first time. So here, you've got a situation where the rule in Simmons was never changed. But this Court came in and summarily reversed the Arizona Supreme Court and said, you've got it wrong. You're looking at your statutes the wrong way in light of what we said in Simmons. So they clarified that going forward. But the underlying rule never changed. So I — it doesn't seem to be novel. One thing I would point out — How can you say that, Counselor? Up until this decision, all prior Arizona cases applying Rule 32.1G asked whether there had been a significant change in Arizona law. And Mr. Cattell is right that it was always was precedent overruled. And we even had it in a Federal case, State versus — this is an Arizona case — State versus — I'm pronouncing it wrong — Poblete, P-O-B-L-E-T-E, Federal law — How do you say it? Poblete. Poblete. Okay. I should have said it in Spanish to start with. It is Poblete. I had it wrong, too, Your Honor. That's what happens when I try to Americanize phrases. Poblete. Federal law changed Arizona's view, okay? It changed Arizona's law on the Petitia question. And there, Arizona applied 32.1G. Here, however, Arizona says, nah. It asks whether there's been a significant change in Supreme Court law, not on Arizona press law. How is that not a novel interpretation? It's not a different context. It's a different test altogether. So when you're applying a new test, you're missing all the issues of why novelty is important because we want to give people fair notice, right? And how could anyone have imagined the hair-splitting that Arizona went through right now? All it has said in the past is, if our precedents have been overturned, that's 32.3. Well, Your Honor — 1G, I mean. Sorry, but I missed it. I guess the bottom line is, how is that not merely something radically different? It's a new test. It's not a new context. Your Honor, I just respectfully disagree. I mean, we — I know you disagree, but explain it to me. Yes. Again, we see that test as simply a restatement or an extension of the test that the Arizona Supreme Court long ago said was how the court was going to approach interpretation. Show me one Arizona case before this one where either the Supreme Court of the United States or the Supreme Court of Arizona had overruled the precedent, and it had not applied 32.1G. I can't point you to that, Your Honor. All I can is echo the point made by Justice Gorsuch in this Court's decision in Beard and subsequently in Walker that these — at some level, you've got to give the Arizona Supreme Court a chance to flesh out its own rule. And that's what it was doing. This was a very unique situation. You know, one thing — But it's the only unique situation where, for seven cases, it refused to apply our precedent, where today there is an amicus brief by the Arizona Capital Representation Project that says that it's even refusing to apply Lynch today. It's finding every reason not to apply Lynch. At a certain point, don't we say stop? But — well, Your Honor, I don't — I disagree with that characterization, that the Arizona Supreme Court has absolutely applied Lynch. And we cite to all the cases where they have. And remember, there's factual issues that underlie the Simmons claim. There has to be a showing of future dangerousness. And so there's issues that have to be vetted in these cases. It's not simply just you get a new resentencing as a result of the Lynch case. So every case has to stand on its own facts and is going to apply differently. So can we go back to Justice Sotomayor's main point there, which is I understand the concept of we have to give states flexibility. This is a new situation in the idea of application versus something else is kind of new, and so we're announcing it here for the first time. But I wonder whether this isn't a place where the bad faith part of it comes in, that to the extent that you would have otherwise had a presumption that you needed some time to work out your interpretation of this rule, in this very unique situation, why shouldn't we say you don't really get that presumption because your friend on the other side says 12 times the court told you what the law was and you refused to apply it? Justice Jackson, maybe it might help by putting some context into how this came about, because before 2002, before Ring, this was really a nonissue in Arizona. So even though Simmons was decided in 1994, until from 1994 to 2002, judges made these determinations. I'm sorry, what is the this? You mean whether or not you get to have this instruction? Yes, before it ever was an issue in Arizona, because judges made the determination of death and aggravators and sentencing. So then Ring comes out, and now Arizona now has to apply Ring. Juries are going to make the aggravator determination. So the first time that the issue came up was actually in this case itself. So this is now where the crime was committed in 2003. His trial was in 2005. So the Arizona Supreme Court is trying to figure out how the Simmons claim applies here. It was not properly presented below. But why doesn't that undermine your claim then? I thought you were saying ultimately that the reason why this is not a significant change is because this was the way the law always was, and so that's how our rule, why our 32G now bars him. But you're suggesting with this part of the story that Arizona wasn't really sure of what the law was before, that they can't now say, oh, it was so settled that you don't get the benefit of collateral review because they hadn't really sorted it out early on. Yes, Your Honor. I understand the question, but the Simmons rule is clear. I mean the holding is clear. If the future dangerousness is at issue, then the defendant can ask for a parole and eligibility instruction through either instruction or argument. What was unclear was whether parole was unavailable in Arizona because the problem was in the criminal sentencing statutes, these are the statutes that the judges and the prosecutors and the defense counsel are looking at. It said at the time that there were three options. There was either the death penalty, there was a natural life sentence, or there was life with the possibility of release or parole after 25 years. It said that. The issue was in a separate title, Title 41, the administrative section for how parole is actually undertaken by the Arizona Board of Executive Clemency. The Arizona legislature flipped off the switch. So it's not even clear to us if anyone was necessarily even aware of that early on in the case. And then you have to remember in Simmons, and as I read this before, this court very clearly said that the state law has to prohibit the defendant's release on parole. So it didn't, though. I see. So you're not at fault. It was confusing. You didn't really know. It was possible that he wasn't getting parole or he would get parole, and so it may not apply. He might get it after 25 years. I understand. All right. So forget the bad faith, then. I mean, you were doing your best in all of this time. It was definitely not bad faith. Absolutely not bad faith by the Arizona Supreme Court. So then we come now to today, and this court makes very clear that in this situation, he is supposed to get it. I'm just still wondering why the rule for collateral review does not allow for that to be considered a change, a significant change from the time in which Arizona was confused about whether he gets it or not. I understand. It's just not the way the Arizona Supreme Court approaches significance. Remember, and this point was made in some of the questioning to my colleagues, that Arizona doesn't have to allow for this PCR process to begin with, but they do in Rule 32.1G. They allow for a successive PCR to occur, and in that rare situation, and I'm quoting Justice Hurwitz's majority opinion in the Shrum case, it's got to be a rare situation where the underlying rule of law has changed. It's not going to happen very often. So it doesn't mean, just because it doesn't happen very often, or it has to be the way the context in which it's come up here, that it's somehow inadequate. I thought we agreed there was a change, there was just not significance. So now we're saying there's a change. Every appellate decision interpreting a statute is a change in some respect. So it's not just whether there's a new case that maybe a defendant would have benefited from had that case been in existence at the time of his trial. That happens all the time. They finalize their direct appeal. They finalize their as-of-right habeas. Maybe they're even finalizing their federal habeas. But it doesn't mean that a subsequent case, just because it comes out and maybe it involved an interpretation of statute that would have benefited the defendant, that that's a significant change. That's just not how the Arizona Supreme Court approaches that rule. Mr. Canfield, bad faith or not, I think Kafka would have loved this. Cruz loses his Simmons claims on direct appeal because the Arizona courts say point blank, Simmons has never applied in Arizona. And then he loses the next time around because the Arizona courts say Simmons always applied in California. I mean, tails you win, heads I lose, whatever that expression is. I mean, how can you run a railroad that way? Your Honor, it's the nature of successive habeas that he absolutely had an opportunity. He was never deprived of his ability to exercise his claim. He didn't do it right. He didn't present it. He didn't do like the defendant in Lynch did on direct appeal, on habeas. He didn't even do it in his federal habeas. He didn't have a claim in Arizona. I mean, Arizona had made completely clear you don't have a Simmons claim. Then after Lynch, after this court says we don't know what Arizona is doing. I mean, a summary reversal is pretty, that's a high bar. We don't know what Arizona is doing. It's clearly violating our law. And then Arizona says, well, we're still not going to allow you to bring the claim because Simmons always applied. I mean, they just said Simmons never applied. Your Honor, in this context, obviously it applied to Lynch. It applied to every defendant whose appeal were pending on direct appeal. Subsequently, this is a very unique situation with this rule that the Arizona Supreme Court has said in these rare situations. Well, it's a unique situation, honestly, because this kind of, it's not really consistent with the legal system. It's the, you know, you win no matter what. But, Your Honor, I just. You win when they say it never applied. You win when you say it always applied. Whatever you say, you win. But, Justice Kagan, had he presented the claim properly like Lynch, he did it in a, whether he tried or not, we don't think he did. They say he did. He asked the judge before the trial even began to pre-sentence him, before any evidence was served. Well, that obviously wasn't proper. And then, during the sentencing phase, he tried to get testimony from the clemency chairman of the Arizona Board of Executive Clemency, which would have been totally speculative. But at the time when he needed to raise this issue, when the jury, actual jury instruction was being drafted and presented, there was no objection. And the judge instructed, you know, that was the time to say, Your Honor, this violates Simmons. There's, we don't believe there's any parole eligibility ever, despite what the statute says, because the statute in Title 41 says otherwise. But nobody did that. He didn't do that. So, to imply. I'm sorry, counsel. Twelve other people did before Lynch. And each and every one of them, at least one, I think multiple ones of them, told you you were wrong. They all said you're misstating in Simmons, you're misstating the rule in this state. And Arizona repeatedly refused to look at that. It took Lynch, finally, before we granted cert. Some of those other people had asked for cert and didn't get it. So, you can't say that somehow Arizona was sandbagged by Mr. Cruz. It had a rule that Simmons didn't apply. It took us telling them in Lynch, All your reasons are wrong. We had said why they were wrong before. Your state law is clear. Now, get it straight. Now, Arizona's given an opportunity, knowing everything that's available, to apply a rule. It's always said when our laws are overruled, you get 32-1G. And it's saying no. So, I don't know where, why what Mr. Cruz did or didn't do before should inform how we read what Arizona's doing under 32-1G. Justice Sotomayor, I think it just comes back to the context. The question that the Court asked us to, it's not the question that they presented. You asked us whether the Arizona Supreme Court's judgment below was independent and adequate. So, we approached the answer to that question from this Court's jurisprudence in under adequacy, where there certainly is a state interest in finality. And here, there's nothing to show that the way we read the adequacy cases from this Court is that if the state courts are trying to deprive the defendant of exercising a federal right or claim, then that's when this Court will intervene and say that the state rule, even though it's a valid procedural rule, is inadequate. Do you think that all of the factors we've ever talked about working together here do suggest that we should find this inadequate? No. And not independent? I mean, there's pieces in this that it's totally novel. No notice given that there would be this new thing, this new test created. Federal law seems to be discriminated against because it's now a new test on what federal law has to be new in some substantial way. There is some elements of bad faith here. What's the third factor? I've forgotten it now, but there's at least a third factor where there's arguments being raised. Wouldn't the combination of all of this suggest that we shouldn't? I don't. I just disagree, Your Honor. I mean, one thing I would point out, I failed to mention earlier, is to the extent there's this idea that the Arizona Supreme Court was doing something unusual by using the application language. Well, it's a certainly new test. Well, so if you look at the Arizona Supreme Court's opinion below paragraph 17, you will see that Justice Montgomery cites to four federal habeas cases where, post-Lynch, where defendants in habeas asked their habeas proceedings to be stayed so that they could file a successive PCR in Arizona Supreme Court and raise the Rule 32.1g argument. And in every case, the court said no, that Lynch is not a significant change in the law. So three different federal court judges in four different cases before the Arizona Supreme Court held the exact same thing. So this isn't just the Arizona Supreme Court. Yeah, except that Arizona got it wrong 12 times before Lynch. Mr. Katyal makes a big point that you don't have any amicus support from other states. Do you want to respond to that? Your Honor, we're not aware of any other state that has a rule similar to Rule 32.1g. So it didn't surprise us. Neither did we solicit other states, which is common for attorney general's offices to do, if we think that that would help the court in some way. But we don't see the reason, other than we certainly would have enjoyed having some more support. We thought we got some pretty good support from the professors who made some excellent points about why taking the case in this posture is sort of unusual, rather than letting it play itself out through the direct appeal, state habeas, and then federal habeas. But with respect to other states, one thing I'm a little worried about is that if we rule in your favor in this case, that it will be giving other states essentially a roadmap for defying this court's criminal law decisions. Because that, you know, bad faith or no, that's what happened as a sort of conceptual matter in this case, that we had so many times in which the Supreme Court made clear, you know, and we had to have lynch in order to really cinch the deal. And what I'm a little worried about is that that ultimately, when we read our rule, if we read your rule in the way that you're saying, amounts to Arizona having said, no one convicted between 1994 and 2016 is going to get the benefit of Simmons. That that's sort of the ultimate way in which it plays out. And that is a little troubling because why couldn't another state do the same thing with respect to a criminal law rule that, of this court, that they don't like? They just read their procedural rule in this way. Justice Jackson, I think the way I'd answer that is just to remind the Justice that the state doesn't even have to have this post-habeas process. That's pretty clear. But if they do, can they read it? Can they read the rules related to it to deny state defendants their federal rights as announced by the Supreme Court? They can't deny federal rights. That's crystal clear. And I thought I made that point that Mr. Cruz was never denied his ability to exercise his federal claim. It's just in the context of a successive PCR, there has to be a significant change before the court's going to allow, you know, to reopen a long final judgment. Mr. Canfield, can I ask you about a footnote in your brief? So this is on 27, footnote 1. And it says, the state maintains that Lynch was wrongly decided. And then you associate yourself with Justice Thomas' dissent in that case. And it says Lynch perpetuated the court's error in Simmons by imposing a magic words requirement. I mean, I guess I was a little bit shocked by that, that you're still arguing that Lynch was wrongly decided. Because to me, it suggests that the state, in its many forms, many actors, is just insisting on not applying Lynch. You know, first you didn't apply Lynch, excuse me, not applying, you know, Simmons or Lynch. You know, first you don't apply Simmons. We come in, we summarily reverse you. We say, you know, here's the deal, Simmons applies. That's what we say in Lynch. Then you can tort your procedural rule to say, oh, well, you know, there's a difference between changes in law and changes in application in law. And then in this case, you're still saying, like, Lynch is wrongly decided, Simmons is wrongly decided. We can't really, we just really hate all this stuff. It sounds like you're thumbing your nose at us. Justice Kagan, there's absolutely no disrespect was intended by that footnote to the court. And I apologize if that's the way it came across. I think the state, we were surprised by the Lynch ruling. I think because of the fact that this court had to get a little bit into the weeds of Arizona, interpreting Arizona statutes, even though it was in the context of applying the Simmons rule. And I think that's maybe a remnant of that confusion. But we understand, we absolutely respect the Lynch decision and the Arizona Supreme Court has applied it. But we don't think that that implies any kind of bad faith or any effort to deprive a defendant, this defendant of his ability to exercise his federal rights. Thank you, counsel. You said in response to a question that Arizona courts may not deny federal rights. You correctly answered yes. Yes, Mr. Chief Justice. But isn't the issue here whether Arizona can limit the availability of collateral review to particular types of claims? That's a very different question, isn't it? It can limit the success of claim to particular, I don't know how, I want to make sure I say this right. I want to make sure I'm answering your question, Your Honor. Mr. Chief Justice, it just has to be across the board. I mean, obviously we wholeheartedly agree that the Arizona Supreme Court cannot promulgate a PCR rule in a way that treats the precedent from this court any different from the precedent of its own court. And so I think the petitioner is incorrect to read the way this court, the Arizona Supreme Court, applied its rule in this context to mean any kind of disrespect or any kind of mistreatment. It just found itself in a very unique situation with the summary reversal in Lynch. And so I hope I answered your question. Thank you, counsel. Justice Thomas? Justice Alito? Well, I thought that the point of the Chief's question, maybe I didn't understand it, was it concerns the distinction between your obligation to apply Federal retroactivity rules if you, at least Federal retroactivity rules, if you entertain the claim. If you entertained this claim, you couldn't apply a retroactivity rule different from the Federal retroactivity rule. But you say that we don't have to entertain it at all because of a procedural rule that categorizes claims in a way that we choose to adopt, correct? Yes, Your Honor. Well, again, if I'm not answering the question, it's only because I don't understand. Let me just make a point. Rule 32.1, there's three prongs to it. So the Arizona Supreme Court never got past one. It has to be a significant change. It has to apply. And that's where the retroactivity question would ordinarily be addressed. And then it has to probably change the outcome. So even if we get past significance, there's a very real possibility that Mr. Cruz will not survive the other components of that rule. No one contests, I assume, that you could impose some sort of temporal limitation or whatever you choose, right? Yes, and that's what the court essentially addressed in Walker v. Martin. And we see some parallels because the time to bring a habeas in California was without substantial delay. So the court had to wrestle with what was substantial and what was insubstantial. And there was arguments that it wasn't being applied in a uniform way. We see a lot of parallels to the significance and insignificance distinction in Rule 32.1G. So the court has to be given the opportunity to flesh that out in a case-by-case determination. Justice Sotomayor? Justice Kagan? Thank you, Counsel. Rebuttal, Mr. Katyal? Thank you. Four points. First, my friend began his argument by admitting that there's, quote, no example of what Justice Barrett called a hair-splitting application and interpretation. He later conceded this was the, quote, first time this interpretation of Rule 32.1 had ever been given. That is the opposite of regularly followed and firmly established every day of the week. Rule 32 has been around for decades. It's never once been interpreted this way. It's always been interpreted as overturning precedent, and you don't need to speculate about this because the Arizona Supreme Court in Rendon had a very similar circumstance except it involved state law. That was a burglary statute. The law had always stayed the same. The statute always stayed the same. What changed was the interpretation of the statute. That court found, the Arizona Supreme Court said, obvious significant change in the law. Lynch works the same way, as Justice Kagan said. At point A, the law is one thing. At point B, it's another. At point A, 12 different criminal defendants, their death sentences are affirmed. At point B, they should now be reversed under this court's decision in Lynch. Second, with respect to the question about Stewart v. Smith, Justice Alito, there's no novelty issue at all in that case, no discrimination against federal law issue in that case. That was just about a procedural rule that just categorized a claim. It wasn't about applying that law or applying that rule in any way to federal law, which is, I take it, why my friend never even mentioned it during his oral argument. Third, the jury instruction point that he made. As I said to Justice Gorsuch, as a matter of federal law, it's wrong under Simmons and Lynch, and also it's wrong factually. Cruz cited Simmons by name in his trial, Joint Appendix page 54 and 55, and also there's another cert petition pending with six more criminal defendants from Arizona raising the same issue in his brief in opposition, admits that two of them don't even have the jury instruction issue because they sought the jury instruction. So I think this case is briefed and decided. You've got the merits there. And finally and most importantly, I want to pick up on what Justice Kagan said about the Kafkaesque rule here. It is striking that they still have not explained why they are so resistant to giving Cruz his Simmons rights, rights that they now say he was always entitled to. They're now calling them well-established, but they've been arguing the contrary for decades. In the end, this is about one thing, making sure that Simmons rights aren't extended to Cruz and people like him, even though we know in this very case from the jury foreman, it would have made a massive difference. I know this argument gets technical about all this stuff, about application rules and stuff, but here's what the state's saying. In plain English, they're saying that John Cruz should be put to death, even though, in fact, because his claim was too good, that it was so powerful that it was well-established at the time. That is not something the Arizona Supreme Court has ever said anything like before. It is the essence of novel. It is the essence of discrimination against decisions of this court. Thank you, counsel. The case is submitted.